**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: March 01 2010**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 09-30140 |
| | ) | |
| Terri L. Hughs-Neal, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

**MEMORANDUM OF OPINION AND ORDER**

This case is before the court on the Chapter 7 Trustee's Motion for Turnover ("Motion") [Doc. # 17], Debtor's opposition to the Motion [Doc. # 18] and the parties' supplemental filings in support of their respective positions [Doc. ## 24, 25]. The Motion seeks turnover of the non-exempt portion of 2008 federal and state income tax refunds that totaled $10,583.00 and raises the issue what part of the refunds are property of the bankruptcy estate and what part of the refunds are property of Debtor's non-debtor spouse.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio. A proceeding regarding turn over of property of the estate is a core proceeding that the court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(E).

The facts are not in dispute. Debtor filed her Chapter 7 bankruptcy petition on January 13, 2009. Debtor's spouse did not file for bankruptcy and is not a debtor before this court. Debtor was employed in

tax year 2008, earning W-2 income of $69,940.51, from which total federal tax withholdings were $11,417.09 and state tax withholdings were $2,234.38. Debtor's spouse was self-employed in 2008 and ran his own business operating a music store. He did not have any W-2 income. He reported gross receipts from his business of $4,931 and overall a net business loss of $7,219. He had no tax withholdings and did not make any estimated income tax payments.

Debtor and her spouse filed joint state and federal tax returns for 2008, [Doc. # 25, pp. 6-20], including a Schedule C of Profit or Loss From Business for Debtor's spouse's sole proprietorship, [*Id.*, pp. 7-8/20]. His Schedule C business loss of $7,219, which is repeatedly erroneously referred to by Debtor as a credit, was carried onto line 12 of their joint federal Form 1040 to reduce their joint income from the $69,941 earned by Debtor to $62,662.[1] After itemized deductions from and credits to line 37 adjusted gross income were applied, the total federal income tax due tax was $1,914 as compared to withholdings from Debtor's wages of $11,417 and a rebate of $600. As a result, the amount of tax overpaid and refunded based on the federal Form 1040 was $10,103. Their Ohio Form IT 1040 showed total tax of $1,754, withholdings of $2,234 from Debtor's pay and a refund of the overpayment of $480. The total tax refunds on the their joint state and federal income tax returns for tax year 2008 were thus $10,583.00. This amount was received post-petition.

The Trustee asserts that Debtor must turn over to him from the tax refunds as property of the estate the total amount of $9,297.00. [Doc. #25, p.4/20]. He used as the basis for his computation federal refunds of $9,503, which includes deduction of the amount refunded for the 2008 recovery rebate credit, plus the state refund of $480, for a total base number of $9,983.00. The unused exemptions available to Debtor and applied to the tax refunds is only $686, with the Trustee subtracting that amount from $9,983.00 to reach the $9,297.00 he claims as property of Debtor's bankruptcy estate.

Debtor does not contest the Trustee's math or the application of available exemptions.[2] Nor is there any issue in this case about the *pro rata* division of the refund between pre-petition and post-petition activities, since the case was filed after the 2008 tax year had been completed and before the returns were filed and the refunds in issue received. Rather, Debtor asserts that she should only be required to turn over the total amount of $2,417.00 of the base refund amount of $9,983.00, less available exemptions which she states to be $611, for a total turnover obligation of $1,806.00. Debtor's argument is based on a hypothetical

---

[1] There was also a reduction of $60 for a capital loss on a sale of stock by Debtor.

[2] The Trustee's calculation affords Debtor $686 in available exemptions, [Doc. #25, p. 4/20], compared to Debtor's calculation of $611 in available exemptions, [Doc. # 24, p.1/4].

calculation by her tax preparer showing that if she had not filed a joint return with her non-debtor spouse, her 2008 tax obligations would have been considerably more and her tax refunds would have been considerably less than actually occurred. [Doc. # 24, Ex. 1]. Specifically, if she and her non-debtor spouse had filed separate 2008 tax returns, her federal income tax liability would have been $9,450 and her net refund would have been only $2,417. [*Id.*, p. 2/3]. Her Ohio income tax liability based on hypothetical separate returns would have been $2,150 and she would have received a net refund of only $84.00. [*Id.*, p. 3/3]. The same hypothetical analysis shows that Debtor's non-debtor spouse would have owed no state or federal income taxes and received no tax refunds if they had filed separately. The hypothetical analysis concludes that the "married filing joint" returns generated "tentative" state and federal tax savings of $8,071. Based on this hypothetical analysis, Debtor argues that all of these "tax savings" should be applied to the actual refunds and treated as the property of her non-debtor spouse not subject to turnover to the bankruptcy estate. The Trustee does not contest the math of the hypothetical calculations presented by Debtor.

The commencement of Debtor's bankruptcy case created an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). Under § 541(a)(1), "a tax refund that is received post-petition is property of the estate if it is attributable to wages earned and withholding payments made during prepetition years," *In re Carlson*, 394 B.R. 491, 493 (8th Cir. B.A.P. 2008); *see Segal v. Rochelle*, 382 U.S. 375, 380 (1966), as is the case here. When, also as is the case here, a debtor and a non-debtor spouse file joint returns, and the debtor earns the substantial portion or the entirety, as here, of the married couple's taxable income, there is a split of authority about how to allocate the refund as between the spouses and therefore as between the bankruptcy estate and the non-debtor spouse. There is no binding Sixth Circuit authority on point.

Among courts that have addressed this issue, three different approaches have developed, none of which are the approach advocated by Debtor. The three approaches are: (1) the majority withholding rule, which allocates the joint tax refund between the spouses in proportion to their respective tax withholdings, *see In re Carlson,* 394 B.R. at 494; (2) the proportional income rule, which allocates the refund according to the income generated by each spouse as a direct percentage of the earnings of the spouses, *e.g.*, *In re Verill,* 17 B.R. 652, 655 (Bankr. D. Md. 1982); and (3) the 50-50 refund rule, which divides the refund equally between spouses without regard to tax withholdings or income, *e.g., In re Marciano,* 372 B.R. 211 (Bankr. S.D.N.Y. 2007). Although bankruptcy courts disagree about which approach is correct, there is generally common ground that the determination of property rights in the assets of a debtor, including tax

3

refunds, is a matter of state law pursuant to *Butner v.United States*, 440 U.S. 48, 54-55 (1979). *In re Gartman*, 372 B.R. 790, 793 (Bankr. D.S.C. 2007).

In this case, the outcome is the same and in the Trustee's favor under either the withholding rule rule or the income rule. Debtor's non-debtor spouse had no tax withholdings and no taxable income in 2008. All of the couple's 2008 income tax refunds were from Debtor's excess tax withholdings, with her non-debtor spouse having neither withheld nor paid any estimated taxes. Likewise, all of the couple's taxable income was earned by Debtor as her non-debtor spouse had a business loss. So while the court need not decide in this case whether the withholding approach or the income approach represents the correct allocation method, the court is persuaded by the bankruptcy court's decision in *In re Gleason*, 193 B.R. 387 (Bankr. D.N.H. 1996), in its observation of the illogic of the approach based on hypothetical separate returns being advocated by Debtor. The facts of *Gleason* are identical in outline to the facts of this case. In *Gleason*, debtor and his non-debtor spouse filed a joint income tax return for 1994, with all withholding paid by the debtor and a loss from the non-debtor spouse's business of $16,657. Mr. Gleason argued just as Debtor does here that "since [he]... has produced evidence of the non-debtor spouse's business losses, the Court should find that the refund was generated by the non-debtor spouse and, thus, it is her property and not property of the estate." *Id*. at 388. Granting the trustee's motion and ordering turnover of the entire income tax refund to the estate, the bankruptcy court disagreed:

> It seems incongruous at best to find that the non-debtor spouse is entitled to a cash refund having paid no taxes. Indeed, had the non-debtor spouse filed a separate tax return, having paid no taxes, she would not receive a cash refund but would only be able to carry forward the business losses against future income. If there were no future income, the losses would never be utilized and the non-debtor spouse would never be entitled to a cash refund.

*Id.*

Debtor points to and the court knows of no Ohio law that would mandate a different result in this case. In endorsing the withholding rule and holding that a non-income producing spouse had no interest in a refund based on a joint income tax return, the court in *In re Smith*, 310 B.R. 320, 323 (Bankr. N.D. Ohio 2004)(quoting *In re Taylor*, 22 B.R. 888, 890 (Bankr. N.D. Ohio 1982)), noted that "Ohio law explicitly leaves property rights unaltered by the fact of marriage: Neither husband nor wife has any interest in the property of the other..." In *Taylor*, the court further explained that federal and Ohio tax law do not change this result:

> [T]he mere signing of a joint husband and wife tax return by the spouse with no income. . . . for the purpose of taking advantage of perceived tax advantages, (does not thereby effect a) metamorphosis . . . converting the nature of the funds into the property of the other party.

4

> Although joint federal tax filings are authorized by 26 U.S.C. Section 6013(a) of the Internal Revenue Code, 26 U.S.C. Section 6013(a) does not affect the ownership of property rights in the federal refund check proceeds. A basic purpose of 26 U.S.C. Section 6013(a) is to equalize the tax burden of married couples in common law and community property states. 26 U.S.C. Section 6013(a) does not propose, nor does it imply, that any property rights in the proceeds are altered by a joint federal income tax filing. . . . Similarly, O.R.C. Section 5711.-14, which permits the filing of joint Ohio tax returns, does not, by its own terms, alter property rights in any joint refunds, and this Court perceives no ground for so implying.

*In re Taylor*, 22 B.R. at 890 (internal quotes and citations omitted).

The bottom line is that Debtor and her spouse did not file separate income tax returns for 2008. *See In re Carlson*, 394 B.R. at 497; *In re Kleinfeldt*, 287 B.R. 291, 294-95 (10th Cir. B.A.P. 2002). Even if separate 2008 returns had been filed, Debtor's non-debtor spouse would have been entitled only to a tax loss carry forward and would not have received the "tax savings" amount as cash in any event. It would have been retained by the United States Treasury as a payment of tax owed by Debtor. The court disagrees that the decision to file a joint return utilizing a non-debtor spouse's business loss to reduce taxable income somehow produces an inequitable windfall to Debtor's creditors and punishes a non-debtor spouse, when the excess funds withheld from Debtor's pay on an ongoing basis would otherwise have been available to pay her creditors to the extent not owed as income tax. Creating an alternate reality that benefits a non-debtor spouse who had no income and paid no taxes by arbitrarily allocating to him on nearly a dollar for dollar basis an actual refund amount that he would not have been entitled to under any scenario lacks support in law, fact and equity.

Debtor does not argue that the 50-50 rule applies because she asserts that more than 50% of the refunds should be treated as her non-debtor spouse's property. Nevertheless the court will address its application to determine whether her spouse is entitled to at least half of the tax refunds in issue. The courts adopting the 50-50 rule generally look to applicable state domestic relations law as mandating that outcome. *E.g., Marciano,* 372 B.R. at 214 (applying New York law); *In re Trickett*, 391 B.R. 657, 660-61 (Bankr. D. Mass. 2008)(applying Massachusetts law); *In re Aldrich*, 250 B.R. 908, 913 (Bankr. W.D. Tenn. 2000)(applying Tennessee law). *Cf. In re Spina*, 416 B.R. 92, 98-100 (Bankr. E.D.N.Y. 2009)(court adopts possible fourth approach, finding that tax refunds presumptively belong to both spouses equally based on New York domestic relations law and the innocent spouse provisions of the Internal Revenue Code).

The court does not find support in Ohio law for the 50-50 rule, as indicated above. Bankruptcy courts in Ohio, including this one, have often addressed property interests as between spouses under Ohio law. Some cases have involved tax refunds. Some cases have involved other types of property. Several cases

have involved the same issue here in the context of applying Ohio exemptions to property of the estate. In all of these situations, bankruptcy courts have persuasively looked to an Ohio statute that provides, subject to certain exceptions not applicable here, that neither spouse "has any interest in the property of the other." Ohio Rev. Code § 3103.04; *see In re Toland,* 346 B.R. 444, 448 (Bankr. N.D. Ohio 2006)(applied to car titled only in debtor wife's name to find that debtor husband had no property interest to exempt). Thus, where an overpayment of a tax obligation results in a tax refund that derives solely from one debtor's income, courts applying Ohio law have found that the debtor's spouse has no property interest in the refund. *See In re Smith*, 310 B.R. at 323; *In re Taylor*, 22 B.R. at 890-91; *In re Smith*, 77 B.R. 633, 635 (Bankr. N.D. Ohio 1987); *In re McEachern*, No. 04-23263, 2005 WL 2792369, *2, 2005 Bankr. LEXIS 2140, *4-5 (Bankr. N.D. Ohio Sept. 6, 2005). Courts have so found notwithstanding that a joint return was filed and the refund check was jointly payable to both husband and wife. *In re Taylor*, 22 B.R. at 891; *In re Smith*, 310 B.R. at 323 ("The fact that the checks name both Debtors as payees, and thus are not transferable without the working spouse's signature, does not alter the underlying property rights in any of the proceeds."); *see United States v. Macphail*, 149 Fed. Appx. 449 (6th Cir. 2005) (finding in a non-bankruptcy context that "a joint income tax return does not create new property interests for the husband or the wife in each other's income tax overpayment"); *McClelland v. Massinga*, 786 F.2d 1205, 1210 (4th Cir. 1986) (same); *cf. In re Garbett*, 410 B.R. 280 (Bankr. E.D. Tenn. 2009) (finding that both spouses had an exemptible interest in a federal income tax refund where the trustee failed to rebut the presumption under Tennessee law that personal property acquired after marriage is held by both spouses as tenants by the entireties).

In this case, the income tax refunds from Debtor's and her non-debtor spouse's jointly filed 2008 income tax returns were entirely from overpayment of taxes by Debtor out of her wages. The court finds that the 50-50 rule does not apply under Ohio law, and under either of the other methods applied under § 541(a) to determine property of the estate in income tax refunds, the entire amount of the refunds in issue here are property of the bankruptcy estate.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the Chapter 7 Trustee's Motion for Turnover [Doc. # 17] be, and hereby is, **GRANTED;** and

**IT IS FURTHER ORDERED** that Debtor shall turnover to the Chapter 7 Trustee the amount of $9,297.00 on account of 2008 income tax refunds as property of the bankruptcy estate.